IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| HAYES OYSTER COMPANY, | ) | Civil No.: 3:16-cv-02028-JE |
| | ) | |
| Plaintiff, | ) | OPINION AND |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| OREGON DEPARTMENT OF | ) | |
| ENVIRONMENTAL QUALITY | ) | |
| and RICHARD WHITMAN, | ) | |
| in his official capacity as its interim director, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Thomas R. Benke
The Environmental Compliance Organization LLC
7845 SW Capitol Hwy, Suite 8
Portland, OR 97219

    Attorney for Plaintiff

Ellen Rosenblum, Attorney General
Christina L. Beatty-Walters, Senior Assistant Attorney General
100 SW Market Street
Portland, OR 97201

    Attorney for Defendants

OPINION AND ORDER – 1

JELDERKS, Magistrate Judge:

Plaintiff Hayes Oyster Company brings this action against Defendants Oregon Department of Environmental Quality ("DEQ") and Richard Whitman in his official capacity as DEQ's interim director (collectively "Defendants"). Plaintiff asserts claims for public nuisance; unjust taking under Article I, Section 18 of the Oregon Constitution; and unjust taking under the Fifth Amendment of the United States Constitution. Defendants now move to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and alternatively under Rule 12(b)(6) for failure to state a claim for relief.

For the reasons set out below, Defendants' Rule 12(b)(1) motion is granted. Having concluded that this Court lacks jurisdiction to hear the case, it is neither necessary nor appropriate to rule on the alternative motion. *Ex parte McCardle*, 74 U.S. 506, 514 (1868).

## Factual Background

According to Plaintiff's Complaint, Plaintiff holds six hundred acres of oyster plats located in Tillamook Bay, Tillamook County, Oregon. Plaintiff holds these acres in accordance with leases administered by the State of Oregon and by right in accordance with Oregon law.

Defendant DEQ regulates commercial oyster culture and harvesting according to its Tillamook Management Plan for Commercial Shellfish Harvesting. Defendant DEQ's Management Plan is designed to ensure compliance with the U.S. Food and Drug Administration's National Shellfish Sanitation Program ("NSSP") standards for commercial shellfish harvesting. The NSSP sets standards for fecal coliform bacteria in shellfish growing waters.

In addition to the NSSP standards, the State of Oregon has a duty under 33 U.S.C. § 1313(d)(1)(C) to establish a Total Maximum Daily Load ("TMDL") for bacteria, including fecal coliform, in the Wilson River, the Trask River, the Tillamook River, and Tillamook Bay. Defendant DEQ established a TMDL for the Tillamook Watershed in 2001.

TMDLs allocate the amounts of pollutants, including fecal coliform, that sources in the watershed are allowed to discharge. TMDL allocations cover two types: wasteload allocations and load allocations. Wasteload allocations relate to point sources of pollution and guide the development of discharge limits set in National Pollutant Discharge Elimination System ("NPDES") permits. Load allocations relate to nonpoint sources and guide targets that dairy farm manure management practices are designed to meet.

Plaintiff's Complaint takes issue with the way that the Tillamook Watershed TMDL determines wasteload allocations and load allocations. First, Plaintiff alleges that Defendant DEQ established wasteload allocations for NPDES permitted dischargers in the Tillamook Watershed with the understanding that water quality standards for growing shellfish would be met in portions of Tillamook Bay while they would not be met in other portions of Tillamook Bay.

Second, Plaintiff alleges that Defendant DEQ adopted a "zero (load) allocation" for dairy farms operating pursuant to specific permits, based on the assumption that these permits prohibited pollutant discharges to surface water from the land application of manure. But dairy farms' land application of manure is not prohibited provided that the application is done in accordance with an approved Animal Waste Management Plan.

Therefore, according to Plaintiff, the wasteload allocations for NPDES permitted dischargers in the Tillamook Watershed are not reasonably calculated to attain compliance with

the water quality standard for *all* shellfish growing waters in Tillamook Bay, and the zero load assumption does not meet Defendant DEQ's duty under federal law. Plaintiff further alleges that Defendant DEQ's 2001 TMDL for the Tillamook Bay Watershed does not meet the TMDL standard set out in 33 U.S.C. § 1313(d)(1)(C).

Plaintiff brings the following claims against Defendants, all stemming from Plaintiff's theory that Defendants have failed to regulate pursuant to their duty under federal law: public nuisance; unjust taking under Article I, Section 19 of the Oregon Constitution; and unjust taking under the Fifth Amendment of the United States Constitution.

## Discussion

Defendants move to dismiss Plaintiff's claims for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). The motion has merit for the reasons discussed below.

**I.  Subject Matter Jurisdiction**

Defendants' motion for lack of subject matter jurisdiction is granted because: (1) Plaintiff's Fifth Amendment claim is barred as unripe given that Plaintiff has not first sought compensation in state court; (2) Plaintiff's claims are barred by Eleventh Amendment sovereign immunity as Defendants have not impliedly or explicitly waived their sovereign immunity; (3) Plaintiff may not seek injunctive relief in this court using its state law claims given that they are state law claims and Defendants' sovereign immunity covers such claims; and, (4) even if the state law claims had survived Eleventh Amendment scrutiny, they do not establish federal question jurisdiction under *Gunn v. Minton*. 133 S. Ct. 1059, 1065 (2013).

  **1. Standards**

Unlike general jurisdiction state courts, federal courts are courts of limited subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal

courts "possess only that power authorized by Constitution and statute . . . ." *Id.* As such, causes of action are presumed to lie outside federal court's limited jurisdiction. *Id.* The party asserting a claim bears the burden of establishing that the court has jurisdiction and that the matter is ripe for adjudication. *See id.*; *Colwell v. Dept. of Health and Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009).

Motions to dismiss for lack of subject matter jurisdiction may take one of two forms: a facial attack or a factual attack. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Under a facial attack, as here, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id*. Facial attacks assume that the complaint's allegations are true and contend that the pleadings themselves do not establish subject matter jurisdiction. *Id.*; *Galvan v. United States*, 957 F. Supp. 2d 1182, 1183 (E.D. Cal. 2013).

2. Analysis

   a. **Plaintiff's Fifth Amendment taking claim is not ripe because Plaintiff did not first pursue state law remedies in state court.**

The Fifth Amendment proscribes the taking of property without just compensation. *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985). However, the Fifth Amendment does not "require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking." *Id.* (internal citations and quotations omitted). Thus, in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, the Supreme Court held that where "a State provides an adequate procedure for seeking just compensation, the property owner cannot claim

a violation of the [Fifth Amendment's] Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195. Where there is a state procedure and a plaintiff has not been denied just compensation, a claim is not ripe. *Id.* at 186.

Defendants contend that state court procedures are adequate and Plaintiff has failed to first seek compensation in state court. The alleged taking in this case would be considered a regulatory taking. Oregon law provides a procedure to obtain compensation for valid regulatory takings claims. *See* Oregon Constitution, Art. I, § 18; *Coast Range Conifers, LLC v. State ex rel. Oregon Board of Forestry*, 339 Or. 136, 145–46 (2005) (noting that Oregon courts look to whether "the regulation leaves the owner with any economically viable use of the property" in regulatory takings claims). Plaintiff has not sought compensation using these procedures. Therefore, Defendants argue that Plaintiff's claims should be dismissed as not ripe.

However, *Williamson County's* ripeness requirement is prudential. *Horne v. Dept. of Agric.*, 133 S. Ct. 2053, 2062, 2062 n.6 (2013); *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1118 (9th Cir. 2010) (en banc). The Ninth Circuit has recognized that ripeness has two components: "constitutional ripeness and prudential ripeness." *In re Coleman*, 560 F.3d 1000, 1004 (9th Cir. 2009). Constitutional ripeness concerns whether there is a case or controversy under Article III of the Constitution. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138–39 (9th Cir. 1999). Prudential ripeness, on the other hand, is a discretionary determination, permitting courts to exercise jurisdiction in certain circumstances. *See Guggenheim*, 638 F.3d at 1118 (9th Cir. 2010) (determining that the plaintiff's claim met prudential ripeness requirements given that (1) the court rejected the plaintiff's taking claim on the merits and it would therefore be a waste of time to put plaintiff through several rounds of litigation and (2) the plaintiff litigated and settled in state court only to have the law subsequently

change); *David Hill Development v. City of Forest Grove*, 688 F. Supp. 2d 1193, 1206 (D. Or. 2010). The requirement that parties seek compensation for a taking through state administrative procedures before filing a federal takings claim is a prudential ripeness requirement. *Horne*, 133 S. Ct. at 2062, 2062 n.6; *Guggenheim*, 638 F.3d at 1118.

For example, in *David Hill Development v. City of Forest Grove*, the court found that a Fifth Amendment claim was sufficiently ripe despite the fact that the plaintiff had not sought compensation in state court. 688 F. Supp. 2d at 1206. Plaintiff had originally filed in state court but the defendant removed the case to federal court. *Id.* Upon removal, the defendant protested that the plaintiff's Fifth Amendment claim was not ripe given that defendant had not been denied just compensation in state court. *Id.* But the court did not dismiss plaintiff's federal takings claim as unripe. *Id.* Defendants waived their Fifth Amendment ripeness argument by removing the case to federal court before a state court ruling. *See id.*; *see also Sherman v. Town of Chester*, 752 F.3d 554, 563–64 (2d Cir. 2014); *Sansotta v. Town of Nags Head*, 724 F.3d 533, 546 (4th Cir. 2013).

Plaintiff urges the court to follow the result in *David Hill Development*. However, this is not a removal case. Defendants have not waived their Fifth Amendment ripeness argument. *See David Hill Development*, 688 F. Supp. 2d at 1206; *Sherman*, 752 F.3d at 563–64. Plaintiff does not otherwise argue why declining to exercise subject matter jurisdiction over Plaintiff's Fifth Amendment takings claim would be imprudent.

As Plaintiff has failed to meet its burden of establishing subject matter jurisdiction, Plaintiff's Fifth Amendment takings claim is dismissed for lack of subject matter jurisdiction.[1]

---

[1] It is not entirely clear whether prudential ripeness is a jurisdictional determination, permitting dismissal under Fed. R. Civ. P. 12(b)(1). *See Horne*, 133 S. Ct. at 2062, 2062 n.6 (noting that prudential ripeness "is not, strictly speaking, jurisdictional" given that the existence of an

### b. All three claims are barred by the Eleventh Amendment.

#### i. All three claims

Plaintiff argues that Defendants impliedly and explicitly waived their Eleventh Amendment sovereign immunity. Pl.'s Resp. 14, 18. The Eleventh Amendment generally bars actions in federal court against a state, its agencies, and its officials in their official capacity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While Plaintiff contends that Defendants have waived their Eleventh Amendment sovereign immunity, the Court disagrees.

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Despite its limited terms, the Supreme Court has held that Eleventh Amendment sovereign immunity applies in suits brought by a citizen against his own state. *Id.* at 98. This immunity can also apply to state agencies, and officials acting in their official capacity. *Id.* at 101 ("Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest."); *Florida Dept. of Health and Rehab. Servs. v. Florida Nursing Home Assoc.*, 450 U.S. 147, 149–50 (1981).

To overcome Eleventh Amendment sovereign immunity, Plaintiff argues that Defendants impliedly and explicitly waived their immunity. Plaintiff cites *College Savings Bank v. FI Prepaid Postsecondary Education*, for the proposition that courts will find a waiver if the state makes a "clear declaration" that it intends to submit itself to federal court jurisdiction. 527 U.S.

---

alternative remedy does not affect whether a case or controversy exists under Article III). Were Plaintiff's federal takings claim not subject to dismissal for ripeness under Fed. R. Civ. P. 12(b)(1), it would be subject to dismissal for ripeness under Fed. R. Civ. P. 12(b)(6).

666, 675–76 (1999). But Plaintiff admits in its Response that it did not include in its Complaint an allegation that the state waived its sovereign immunity. Pl.'s Resp. 18. Plaintiff seeks leave to amend its Complaint to allege that Defendants impliedly waived their sovereign immunity "by accepting delegation of authority under the Clean Water Act," and argues that they explicitly waived their sovereign immunity. Pl.'s Resp. 18.

But even if Plaintiff were to amend its Complaint, Plaintiff would be unable to establish that its claims overcome Eleventh Amendment sovereign immunity through implied or explicit waiver. Contrary to Plaintiff's assertion, Eleventh Amendment sovereign immunity waivers are not implied. *Id.* at 682. In *College Savings Bank* a federal statute, the Trademark Remedy Clarification Act ("TRCA"), had attempted to abrogate a state's Eleventh Amendment sovereign immunity if a state engaged in certain activities regulated by the Lanham Act. *Id.* at 668–69. The plaintiff argued that the state waived its sovereign immunity by "engaging in the interstate marketing and administration of its program after the TRCA made clear that such activity would subject Florida Prepaid to suit." *Id.* at 671. The Supreme Court rejected plaintiff's argument, ruling that in spite of the federal statute, sovereign immunity was not impliedly or constructively waived. *Id.* at 680, 683. Thus, *College Savings Bank* forecloses Plaintiff's argument that Defendants impliedly waived their sovereign immunity by accepting delegation of authority under the Clean Water Act ("CWA").

Plaintiff also fails to show that Defendants explicitly waived their Eleventh Amendment sovereign immunity. On a motion to dismiss for lack of subject matter jurisdiction, "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Plaintiff argues in its Response

that Defendants have expressly waived their sovereign immunity and argues that the Court's determination of whether Defendants waived their sovereign immunity is a question of fact. Pl.'s Resp. 18. But Plaintiff has not offered facts supporting an express waiver finding. Further, Plaintiff has not cited a state statute or regulation, or submitted evidence supporting its express waiver argument. As Plaintiff bears the burden of proving the existence of subject matter jurisdiction, the Court finds that Defendants have not waived their Eleventh Amendment sovereign immunity.

ii. **State law claims**

Even if the Court finds that Defendants did not waive their Eleventh Amendment sovereign immunity, Plaintiff argues that its state law claims for injunctive relief are permissible given that they are against a state official and are more properly characterized as federal law claims. The Supreme Court has found that when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct despite Eleventh Amendment sovereign immunity. *Edelman v. Jordan*, 415 U.S. 651, 664–65 (1974). Some courts have referred to this as the "*Ex Parte Young* exception" to Eleventh Amendment sovereign immunity. *Nat'l Audobon Soc., Inc. v. Davis*, 307 F.3d 835, 847–48 (9th Cir. 2002) (citing *Ex Parte Young*, 209 U.S. 123, 159–60 (1908)). Plaintiff argues that its claims fall under this exception to sovereign immunity given that its state law claims are properly characterized as federal law claims. Plaintiff's argument is unavailing as the cases Plaintiff cites do not support Plaintiff's characterization theory.

In *Bragg v. West Virginia Coal Association*, the plaintiff brought an injunctive action under the citizen suit provision of the federal Surface Mining Control and Reclamation Act to prohibit a West Virginia official from issuing surface coal mining permits. 248 F.3d 275, 285

(4th Cir. 2001). The plaintiff argued that its suit was not barred by Eleventh Amendment sovereign immunity given that it involved a federal claim seeking an injunction against a state official. *Id.* at 290–91. However, the federal regulatory scheme at issue provided that when states regulate, they do so exclusively. *Id.* at 294. West Virginia was regulating. *Id.* at 295–96. Thus, the court found that the plaintiff's federal law claim was functionally a state law claim. *Id.* The plaintiff's claim was barred as it did not fall under the *Ex Parte Young* exception. *Id.* at 298.

*Bragg* illustrates that a federal claim may be characterized as a state law claim and therefore not overcome Eleventh Amendment sovereign immunity. *Id.* at 298. It does not support the reverse: characterizing a state law claim as a federal claim for Eleventh Amendment sovereign immunity purposes.

Plaintiff also cites *Arkansas v. Oklahoma* for the proposition that "state water quality standards—promulgated by the States with substantial guidance from the EPA and approved by the Agency—are part of the federal law of water pollution control." 503 U.S. 91, 110 (1992). But Plaintiff takes this statement out of context. *Arkansas* concerned an interstate dispute over whether an EPA decision sufficiently protected the interests of the downstream state, Oklahoma. *Id.* at 94. The dispute's interstate context was significant. *See id.* at 110. (noting that "we have long recognized that interstate water pollution is controlled by federal law . . . [and] treating state standards in interstate controversies as federal law accords with the [Clean Water Act's] purpose").

Further, in analyzing the EPA decision, the *Arkansas* court found that the Court of Appeals did not apply the appropriate level of deference to the EPA's determination. *Id.* at 110. The Court of Appeals' application of the improper standard was rooted in its failure to recognize that, for purposes of reviewing the EPA's decision, state water quality standards were to be

OPINION AND ORDER – 11

treated as federal law. *Id.* at 110. *Arkansas*' holding that courts should treat state water quality standards as federal law for deference purposes is not the same as holding that state water quality standards are to be treated as federal law for Eleventh Amendment purposes. *See id.* ("Because we recognize that, *at least insofar as they affect the issuance of a permit in another State*, the Oklahoma standards have a federal character, the EPA's reasonable, consistently held interpretation of those standards is entitled to substantial deference.") (emphasis added). In short, the Court finds that *Arkansas* and the other cases cited by Plaintiff do not support Plaintiff's contention that its state law claims are properly characterized as federal law for Eleventh Amendment purposes.[2]

### c. Plaintiff's public nuisance claim does not arise under federal law.

Assuming that the Court finds that Plaintiff's state public nuisance claim overcomes Eleventh Amendment sovereign immunity but its Fifth Amendment claim is dismissed, Plaintiff asserts that the Court has subject matter jurisdiction over this matter because its state public nuisance claim arises under federal law. Plaintiff argues that its public nuisance claim "involve[s] as a necessary element a substantial, disputed question of federal law, specifically whether the Department of Environmental Quality's implementation of 33 U.S.C. § 1313(d)(1)(C) . . . was and is unlawful." Compl. ¶ 2. 33 U.S.C. § 1313(d)(1)(C) of the Clean Water Act provides that states shall establish TMDLs for certain pollutants in certain water bodies. Plaintiff does not suggest that the Clean Water Act provides a federal private right of action for improper implementation of 33 U.S.C. § 1313(d)(1)(C). Rather, Plaintiff argues that its

---

[2] Plaintiff also cites *Almond Hill School v. U.S. Department of Agriculture*. 768 F.2d 1030 (9th Cir. 1985). *Almond Hill* illustrates that plaintiffs may overcome Eleventh Amendment sovereign immunity by filing a federal claim—statutory or constitutional—for injunctive relief against a state official. *Id.* at 1034. It does not suggest that state law claims may be characterized as federal law claims for the purpose of overcoming Eleventh Amendment sovereign immunity.

public nuisance claim should be viewed as arising under federal law, thus conferring federal question jurisdiction under 28 U.S.C. § 1331.

State law claims do not normally arise under federal law. 28 U.S.C. § 1331 provides that "district courts shall have original jurisdiction of all civil actions *arising under* the Constitution, laws, or treaties of the United States." (emphasis added). A case generally "arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013). "[T]his 'creation' test admits of only extremely rare exceptions . . . ." *Id.*

*Gunn v. Minton* sets out one of these rare exceptions. *Id.* Under *Gunn* a state law claim will arise under federal law when "a federal issue is: necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 1065. As the Court finds that Plaintiff has failed to meet the fourth requirement, the Court will only address this requirement.

The fourth *Gunn* factor requires that the court's consideration of the federal issue does not disrupt "the appropriate balance of federal and state judicial responsibilities." *Id.* at 1068 (internal quotations and citations omitted). According to Plaintiff, the federal issue "is whether the TMDL established by DEQ for the Tillamook Bay Watershed satisfies the standard of 33 U.S.C. § 1313(d)(1)(C)." Pl.'s Resp. 4. The court looks to "congressional intent, judicial power, and the federal system" to discern whether hearing such an issue adheres to Congress' desired balance of federal and state judicial responsibilities. *Rose Acre Farms, Inc. v. North Carolina Dept. of Env't and Nat. Res.*, 131 F. Supp. 3d 496, 504 (E.D.N.C. 2015) *(quoting Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 810 (1986)); *see also Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318 (2005) (finding that *Merrell Dow's* contextual

analysis "fits within the framework of examining the . . . consistency of [a federal] forum with Congress's intended division of labor between state and federal courts").

In passing the Clean Water Act, Congress declared that "[i]t is the policy of the Congress to recognize, preserve, and protect the primary responsibilities and rights of States to prevent, reduce, and eliminate pollution . . . ." 33 U.S.C. § 1251(b); *see also Chevron U.S.A., Inc. v. Hammond*, 726 F.2d 483, 489 (9th Cir. 1984) (noting that § 1251(b) makes "the role of the states . . . clear"). States' role under the Clean Water Act is a "major one." *Shell Oil Co. v. Train*, 585 F.2d 408, 410 (9th Cir. 1978). To reduce the discharge of pollutants into CWA covered waters, states are directed to "adopt water quality standards for all [covered state] waters . . . and to review them at least every three years." *Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*, 16 F.3d 1395, 1400 (4th Cir. 1993) (citing 33 U.S.C. §§ 1313(a)–(c)(1)). "To adopt these standards, states must first classify the uses for which the water is protected, such as fishing and swimming, and then each state must determine the level of water quality necessary to protect those uses." *Id.* The EPA reviews "state-implemented standards, with approval and rejection powers only." *Id.* at 1399 (citing 33 U.S.C. § 1313(c)). "Water quality standards are a critical component of the CWA regulatory scheme because such standards serve as a guideline for setting applicable limitations in individual discharge permits." *Id.*

States administer water quality standards through NPDES permits, state water quality management plans, and TMDLs. 33 U.S.C. § 1342(b); 33 U.S.C. § 1313. "[A] state's exercise of NPDES permitting authority is subject to EPA approval." *Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*, 16 F.3d at 1400. Upon approval, the states manage the program while the EPA retains "residual federal supervisory authority." *Shell Oil Co.*, 585 F.2d at 410. Further, through water quality management plans, "States coordinate among agencies, local authorities, and

nongovernmental organizations" to reduce pollution. *Anacostia Riverkeeper, Inc. v. Jackson*, 798 F. Supp. 2d 210, 217 (D.D.C. 2011).

Water quality management plans employ TMDLs that are established by states and submitted to the EPA for approval or disapproval. *Pronsolino v. Nastri*, 291 F.3d 1123, 1128 (9th Cir. 2002). "A TMDL is the 'total maximum daily load of a given pollutant that can be added into a navigable water of the United States on a given day." *Food and Water Watch v. United States Env't Prot. Agency*, 4 Supp. 3d 62, 68 (D.D.C. 2013). TMDLs must "be established at a level necessary to implement the applicable water quality standards . . . ." 33 U.S.C. § 1313(d)(1)(C). When approved, the state must incorporate the TMDL into its planning process. *Pronsolino*, 291 F.3d at 1128. But "[u]nlike NPDES permits, TMDLS are not federally enforceable." *Bravos v. Green*, 306 F. Supp. 2d 48, 52 (D.D.C. 2004). "[T]o encourage compliance, the EPA may use federal grants to encourage the States to address nonpoint source pollution and accomplish the loading reductions established in a TMDL." *Id.* (quotation omitted). "The upshot of this intricate scheme is that the [Clean Water Act] leaves to the states the responsibility of developing plans to achieve water quality standards if the statutorily-mandated point source controls will not alone suffice, while providing funding to aid in the implementation of the state plans." *Pronsolino*, 291 F.3d at 1128.

Although the federal-state relationship envisioned by the Clean Water Act—and envisioned by the TMDL scheme at issue—includes a residual federal component, Plaintiff has not convinced the Court that Congress intended federal courts to be the avenue by which parties may challenge *state* TMDL decisions. States may develop TMDLs and submit them for EPA approval. *Id.* Federal courts may review the *EPA's* approval of TMDLs with the EPA as a defendant. *See San Francisco Baykeeper, Inc. v. Browner*, 147 F. Supp. 2d 991, 1006 (N.D. Cal.

OPINION AND ORDER – 15

2001) (noting that private plaintiffs can challenge EPA approval of specific TMDLs under the Clean Water Act and the APA); *Pronsolino v. Marcus*, 91 F. Supp. 2d 1337, 1355 (N.D. Cal. 2000) ("Landowners like the Pronsolinos have redress. . . [they] might collectively or singly challenge a TMDL by EPA"), *aff'd*, 291 F.3d 1123 (9th Cir. 2002); *Nat. Res. Def. Council, Inc. v. Fox*, 30 F. Supp. 2d 369, 380–83 (S.D.N.Y. 1998) (reviewing whether TMDLs that were submitted by a state and approved by the EPA were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). But Plaintiff does not assert that there is a federal private right of action for challenging <u>state</u> TMDL decisions.

The absence of a federal private right of action and the complex federal-state structure at issue serve as an "important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331." *See Grable*, 545 U.S. at 318 (quoted) (finding lack of federal private right of action relevant to determining Congress' desired balance of federal and state judicial responsibilities); *Shell Oil Co.*, 585 F.2d at 410 ("The role envisioned for the states . . . is a major one, encompassing both the opportunity to assume the primary responsibility for the implementation and enforcement of federal effluent discharge limitations and the right to enact requirements which are more stringent than the federal standards."); *Center for Biological Diversity v. U.S. E.P.A.*, No. C13–1866JLR, 2014 WL 636829, at *4 (W.D. Wash. Feb. 18, 2014) (noting that "each TMDL represents a goal that may be implemented by adjusting pollutant discharge requirements in individual NPDES permits or establishing nonpoint source controls" and that states retain discretion in adjusting these pollutant discharge requirements); *Bravos*, 306 F. Supp. 2d at 52 (finding that TMDLs are not federally enforceable and that the EPA may use grants to encourage compliance); *cf. Rose Acre Farms, Inc.*, 131 F. Supp. 3d at 505 (finding that the federal-state relationship created by the Clean Water Act and the lack of a

federal private right of action indicated that Congress did not aim for state challenges to state permitting decisions to arise under federal law). The absence of a federal private right of action for challenging state TMDL determinations and the carefully crafted federal-state structure at issue suggest that reviewing the merits of this action would "disturb[] the Congressionally approved balance of federal and state judicial responsibilities . . . ." *Cf. Rose Acre Farms, Inc.*, 131 F. Supp. 3d at 505 (quoting *Grable*, 545 U.S. at 318).

Bearing the burden of establishing subject matter jurisdiction, Plaintiff makes two arguments that the Court will address. First, Plaintiff argues that *County of Santa Clara v. Astra USA, Inc.*, supports finding that the TMDL challenge here will not disrupt the balance of federal and state judicial responsibilities. 588 F.3d 1237, 1243 n.5 (9th Cir. 2009), *rev'd on other grounds*, 463 U.S. 110 (2011). However, *County of Santa Clara* involved a short sua sponte jurisdictional analysis of a different federal issue in a footnote. *Id.* (relating to whether federally funded medical clinics were overcharged for prescription drugs in violation of a federal contract between a federal agency and a drug manufacturer). The footnote does not discuss the balance of federal and state judicial responsibilities at issue in *County of Santa Clara*. *Id.*

Second, Plaintiff argues that permitting federal jurisdiction here will not upset the balance of federal and state judicial responsibilities as it will not attract "a horde of original filings and removal cases raising other state claims with embedded federal issues." *Grable*, 545 U.S. at 318. Putting aside this argument's speculative nature, Plaintiff ignores the fact that determining the balance of federal and state judicial responsibilities is a "contextual enquiry." *Id.* Congress carved out a major role for states in determining TMDLs. States make TMDL determinations as part of a larger, complex, federal-state relationship. This relationship, coupled with the lack of a federal private right of action for challenging state determinations, suggests

that finding federal jurisdiction here would disrupt the balance of federal and state judicial responsibilities.

The reasoning in the Ninth Circuit's very recent treatment of Clean Water Act subject matter jurisdiction in the NPDES permitting context further supports the Court's decision. *See S. Cal. All. of Publicly Owned Treatment Works v. U.S. E.P.A.*, No. 14-74047, at *21–22 (9th Cir. Apr. 12, 2017). The case holds that a provision of the Clean Water Act that allows federal courts to review the EPA's issuance of NPDES permits does not allow federal courts to review EPA Objection Letters that are sent to state permitting authorities. *Id.* at 5, 22. The Ninth Circuit noted the "strong congressional intent to make the states, where possible, the primary regulators of the NPDES system . . . ." *Id.* at 22. (quoting *Am. Paper Inst., Inc. v. U.S. E.P.A.*, 890 F.2d 869, 873 (7th Cir. 1989)). Therefore, "the CWA as amended 'does not contemplate federal court review of state-issued permits' and, accordingly, the federal courts may not review EPA's objections to state-drafted permits before those permits have been issued by the states." *Id.* (quoting *Am. Paper Inst., Inc.*, 890 F.2d at 875). "Because 'state courts are perfectly competent to decide questions of federal law,' the 'state courts may examine challenges to any pertinent EPA objections.'" *Id.* (quoting *Am. Paper Inst., Inc.*, 890 F.2d at 875).

Plaintiff does not meet the fourth *Gunn* requirement. Therefore, subject matter jurisdiction over Plaintiff's state public nuisance claim is lacking.

## II.     Failure to State a Claim

Defendants' alternative motion for failure to state a claim is moot due to the Court's lack of subject matter jurisdiction.

///

///

**Conclusion**

For the reasons stated above, Defendants' motion to dismiss (ECF #8) Plaintiff's claims for lack of subject matter jurisdiction is GRANTED.

DATED this 17th day of April, 2017.

                                        /s/ John Jelderks
                                 John Jelderks
                                 U.S. Magistrate Judge